**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| GARY MONTGOMERY,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN PHILLIPS, FRANK STRADA, STACEY OAKS, BRANDON FOSTER, QUINCY TISDALE, and JOHN DOE,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 3:25-CV-538-KAC-JEM |

## MEMORANDUM AND ORDER

Plaintiff Gary Montgomery, a Tennessee Department of Correction ("TDOC") prisoner previously housed in the Morgan County Correctional Complex ("MCCX"), filed (1) a pro se "First Amended Verified Complaint" for violation of 42 U.S.C. § 1983 [Doc. 2], (2) a motion to amend/revise the complaint [Doc. 4], and (3) a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons below, the Court (1) **GRANTS** the motion for leave to proceed *in forma pauperis* [Doc. 1], (2) **DENIES** the motion to amend/revise the complaint [Doc. 4], and **DISMISSES** the Complaint for failure to state a claim upon which relief can be granted.

## I. MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner who brings a civil action may apply for permission to file suit without prepaying the filing fee. See 28 U.S.C. § 1915(a). Review of Plaintiff's Motion [Doc. 1] shows that he lacks sufficient resources to pay the filing fee in a lump sum. Accordingly, under 28 U.S.C. § 1915, the Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] and **ASSESSES** him the civil filing fee of three hundred fifty dollars ($350.00).

The custodian of Plaintiff's inmate trust account **MUST** submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account must submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid. 28 U.S.C. § 1915(b)(2). The Clerk **MUST** send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure payment of the filing fee.

## II. MOTION TO AMEND/REVISE COMPLAINT

The same day Plaintiff filed his "First Amended Verified Complaint" [Doc. 2], he also filed a motion to amend the complaint [Doc. 4]. In the one-page motion to amend, Plaintiff states that he wants to amend "TO ADD THE DEFENDANT FRANK STRADA, COMMISSIONER OF TDOC, AND TO CORRECT CERTAIN LANGUAGE" [Doc. 4 at 1]. But Frank Strada is already a defendant in the "First Amended Verified Complaint" that plaintiff filed with the Court [*See* Doc. 2 at 1]. And Plaintiff did not attach a proposed amended complaint with his Motion, as Local Rule 15.1 requires, or otherwise indicate what language he wished to correct [*See id.*]. *See* E.D. Tenn. L.R. 15.1. So, the Court **DENIES** that request because it is (1) unnecessary and superfluous as it applies to Defendant Strada and (2) legally unsupported as it applies to an unidentified desired change to language without a proposed amended complaint, where the Court cannot understand the scope or desired changes, *see* E.D. Tenn. L.R. 15.1; *Forrester v. Am. Sec. & Pro. Serv. LLC*,

No. 21-5870, 2022 WL 1514905, at *4 (6th Cir. May 13, 2022) (quoting *United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021)). So, the "First Amended Verified Complaint" [Doc. 2] is the operative Complaint.

## III. COMPLAINT SCREENING

Under the PLRA, the Court must screen the operative complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant that is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive initial review, the "First Amended Verified Complaint" [Doc. 2] "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is "facial[ly] plausib[le]" if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S.at 678). But allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil

rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

According to the Complaint, Defendant Quincy Tisdale, an inmate at MCCX, was not allowed in Plaintiff's housing unit [Doc. 2 at 4]. But on one occasion, Defendant Tisdale gained access to Plaintiff's housing unit through a door that Defendant Doe left unsecured in a way that violated TDOC policy [*Id.* at 4-5]. Defendant Tisdale entered Plaintiff's cell, "demanded [that] Plaintiff purchase stolen kitchen cheese singles," attacked Plaintiff when he refused, and "threatened Plaintiff with mortal danger from gang get back or retribution if Plaintiff told staff" [*Id.* at 5].

Plaintiff fled his cell and found Defendant Doe "watching youtube videos oblivious to the obvious assault and battery" inflicted by Defendant Tisdale [*Id.*]. Plaintiff identified his assailant and asked to go to the medical clinic, which Defendant Doe allowed [*Id.*]. Plaintiff then received medical care [*Id.* at 6]. Plaintiff suffered mental and physical injuries as a result of the attack [*Id.*].

The Complaint asserts that Defendants Phillips, Strada, Oaks, and Foster had a duty to adequately train Defendant Doe regarding securing the housing unit door to prevent a substantial risk of harm from inmates like Defendant Tisdale, which they allegedly breached [*Id.* at 6, 7-8, 9]. The Complaint also asserts that Defendant Strada had a duty to train Defendant Phillips and Oaks regarding how to adequately supervise and train officers regarding ensuring all inmates' safety, that he breached [*Id.* at 6-7].

Additionally, Defendant Doe knew of a substantial risk of serious harm from leaving the door to Plaintiff's former housing unit unsecured because "there was a prevalent history of assaults and batteries by inmates on inmates" when the door was not secured [*Id.* at 8].

After Defendant Inmate Tisdale attacked Plaintiff, officers interrogated and restrained Plaintiff before moving him to high security without his commissary, which was taken by someone [*Id.*]. "Unit Officer Neal" then "picked over" Plaintiff's property [*Id.*]. Also, Plaintiff was "placed on 'pending investigation' for approximately two weeks" [*Id.*]. Plaintiff therefore claims that Defendant Foster failed to properly investigate the assault [*Id.*]. Plaintiff further asserts that Defendant Foster told Plaintiff he would go back to general population when his assailant was found, even though Plaintiff had told staff where Defendant Tisdale resided [*Id.* at 8-9].

According to Plaintiff, Defendants Phillips, Strada, Oaks, and Foster's knowledge "of [Defendant Tisdale's] felonies [while] doing nothing about it makes [them] liable for misprision of felony," presumably under state law [*Id.* at 9]. Plaintiff further asserts that these Defendants did not contact law enforcement or the state to prosecute Defendant Tisdale or allow Plaintiff to file a police report or criminal complaint, despite his requests [*Id.*]. Plaintiff also states that "systemic deficiencies in protocols, and procedures, coupled with the failure to adequately train, allow vulnerable inmates, like Plaintiff, to be assaulted and battered, or worse at MCCX, [and] constitute[] deliberate indifference" [*Id.* at 10].

Plaintiff sued MCCX Warden Shawn Phillips, TDOC Commissioner Frank Strada, Assistant Warden Stacey Oaks, Chief Internal Affairs Investigation Officer Brandon Foster, Inmate Quincy Tisdale, and MCCX Officer John Doe [*Id.* at 1-4]. He raises claims under 42 U.S.C. § 1983. He seeks declaratory relief, injunctive relief, and monetary damages [*Id.* at 10-12].

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

**A. Defendant Inmate Tisdale**

To start, Defendant Quincy Tisdale was an inmate at MCCX at the relevant time [*See* Doc. 2 at 4]. There are no facts in the Complaint that would allow the Court to infer that he was a state actor when he attacked Plaintiff. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). So, the Complaint fails to state a Section 1983 claim against him.

**B. Official Capacity Claims**

The Complaint raises claims against Defendants Phillips, Strada, Oaks, Foster, and Doe in their official and individual capacities [*Id.* at 2-4]. The official capacity claims against these Defendants are actually against the TDOC or the State of Tennessee, whichever entity employs each specific Defendant. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). But neither TDOC nor the State of Tennessee is subject to a Section 1983 claim. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (providing that "a State is not a person within the meaning of § 1983"); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State" and not a "person" within meaning of § 1983). So, the claims against these Defendants in their official capacity fail.

**C. Defendant Doe Individual Capacity Claims**

Moving to Defendant Doe in his individual capacity, the Court takes judicial notice that, at the time relevant to this action, Plaintiff was a convicted prisoner.[1] So, his failure to protect claim falls under the Eighth Amendment. *See Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 599 (6th Cir. 2025) ("Corrections officers must protect convicted prisoners from harm under the Eighth Amendment, and they must protect pretrial detainees from harm under the Due Process Clause.") (citation omitted). The Eighth Amendment's prohibition on "cruel and

---

[1] https://foil.app.tn.gov/foil/search_additional.jsp.

unusual punishment . . . imposes duties" on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials must "take reasonable measures to guarantee the safety of" prisoners. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527-27 (1984)).

But not "every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Liability attaches to a prison official's failure to protect a prisoner if the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted).

In a conclusory fashion, the Complaint states that Defendant Doe "knew of and disregarded, the substantial risk of harm" from leaving the relevant door "unsecured" because there is a history of inmate violence when the door is left open [Doc. 2 at 8]. But the Complaint does not allege facts that would allow the Court to infer that Defendant Doe was aware of that history and consciously disregarded the risk to Plaintiff from an unsecured door [*See id.*]. Conclusory allegations and recitation of the elements of a claim are not sufficient to state claim. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). So, the Complaint fails to state a failure to protect claim against Defendant Doe.

### D. Defendants Phillips, Strada, Oaks, and Foster Individual Capacity Claims

Moving to Defendants Phillips, Strada, Oaks, and Foster in their individual capacities, the Complaint fails to state a claim against them too.

#### 1. Supervisory Liability

Start with any intended supervisory liability claim. To state a claim against these

Defendants as supervisors of Officer Doe, each must have engaged in some unconstitutional behavior of his own. *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025). That is, the Complaint must allege facts showing that each Defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (citation omitted). Here, the complaint falls short.

As an initial matter, as discussed above, the Complaint does not adequately plead a failure to protect claim against Defendant Doe. So, none of Defendant Doe's supervisors are liable for a failure to supervise based on a failure-to-protect constitutional violation by Defendant Doe. *See Venema*, 133 F.4th at 633. But even if a violation of Plaintiff's constitutional rights occurred based on the facts alleged in the Complaint, there are no allegations that would allow the Court to even infer that any of these individual Defendants "implicitly authorized, approved, or knowingly acquiesced" in the constitutional violation. *See id.* For example, the Complaint does not allege that Defendant Phillips, Defendant Strada, Defendant Oaks, or Defendant Foster knew of the alleged prior inmate attacks due to an unsecure door [*See* Doc. 2]. Nor does the Complaint allege that any of these Defendants approved of the conduct that led to Plaintiff's injury [*See id.*].

**2. Failure to Train**

To the extent that the Complaint could be read to raise a claim that any of these Defendants are individually liable based on a failure to "train" Officer Doe or someone who then trained Officer Doe, [*see, e.g.*, Doc. 2 at 9], that claim would fail too. Failure to train is a theory of Section 1983 liability that allows a ***municipality*** to be held liable for failing to train its employees in certain limited circumstances. *See Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 323 (6th Cir. 2023). But that theory does not apply to an individual defendant in his individual

capacity. So, any failure to train claim against these individual defendants in their individual capacity fails.

### 3. Failure to Investigate/Allow Plaintiff to Initiate Prosecution

Finally, any claim against these Defendants for failure to investigate or allow Plaintiff to initiate a prosecution fails too. To state a Section 1983 claim, Plaintiff must allege that one of his constitutional rights were violated. But Plaintiff does not have a constitutional right to an investigation or the prosecution of another person. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"))). So, any claim based on this theory fails.

### 4. Housing Placement Against Defendants Foster

Liberally construed, the Complaint could also be read to raise a Section 1983 claim against Defendant Foster for Plaintiff's two-week housing placement "on investigation" after Defendant Inmate Tisdale's attack [Doc. 2 at 8]. But that claim would fail. The Complaint includes little detail about the conditions that Plaintiff faced while "on investigation" [*See* Doc. 2]. And it does not set forth any facts showing that Plaintiff's housing placement "on investigation" resulted in an extreme deprivation of a life necessity, as is generally necessary to show an Eighth Amendment violation. *See Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (providing that only allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" support a cognizable Eighth Amendment conditions-of-confinement claim (citations and quotations omitted)). Nor does the Complaint set forth any facts suggesting that Plaintiff was entitled to some further process before this housing placement. *See, e.g.*, *Sandin v. Conner*, 515

U.S. 472, 484, 486-87 (1995) (finding that a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

## IV. CONCLUSION

For the reasons above:

1. The Court **GRANTED** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1];

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust accounts **MUST** submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk **MUST** provide a copy of this Memorandum and Order and to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. The Court **DENIED** the motion to amend [Doc. 4];

6. Even liberally construing the Complaint, it fails to state a claim upon which relief may be granted under Section 1983.

7. Accordingly, the Court **DISMISSES** this action therein under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. Therefore, should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. **AN APPROPRIATE JUDGMENT WILL ENTER.**

**SO ORDERED.**

**ENTER:**

/s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge